## Egolf Estate

*T. G. Confer*, for accountant.
*Ellis Brodstein*, for Commonwealth.

MARX, P. J., April 12, 1952.—Elmer O. Egolf died April 18, 1951, testate, unmarried, survived by Oscar T. Egolf, a son, and Leafie M. Smith, a daughter. His last will dated September 13, 1945, was duly probated on April 27, 1951. Letters testamentary were thereupon granted to Leafie M. Smith, named executrix.

The executrix filed an affidavit, in lieu of inventory, reporting personal estate assets as follows:

1. Death benefits paid by Hamburg Council No. 8, Independent Americans ...........................$ 300.00
2. Membership benefits payable upon the death of the member, beneficial association, Union Fire Company No. 1 ........................................ 768.00
3. Membership benefits payable upon the death of the member, Hamburg Council No. 8, Independent Americans ........................................ 117.00
4. Household goods ................................ 5.00

Total ....................................$1,190.00

With the aggregate of those assets the accountant here charges herself. She takes credit for payments made, $196.25, and reports a balance due the estate of $993.75. At the audit the accountant was allowed an additional credit of $6, payments made to attesting witnesses, at probate of will.

A claim was presented in behalf of Liebensperger Funeral Home in the sum of $477.40, funeral bill. Liability was admitted and payment is decreed. An award of $4 is made in behalf of the clerk of this court, adjudication costs.

We find an undistributed balance of $506.35, against which is presented the claim of the Commonwealth of Pennsylvania, Department of Public Assistance, in the sum of $513.70, assistance grants furnished decedent from August 24, 1948, to September 21, 1950. Payments as charged were admitted, a total liability of $513.70 is charged and claimant asks that the aforesaid balance of $506.35 be decreed on account of this claim. The right of the Commonwealth to recover is denied.

The balance for distribution is composed of benefits to which decedent and his estate became entitled in consequence of the contractual relationship existing between the member and the contributing organizations. The record includes nothing which would indicate that the sums paid to the account were not incidental to the membership of decedent in the paying organizations. Nothing appearing to the contrary, we assume that the individual, upon becoming a member of the organization, under the charter and bylaws of the organization was required to pay dues and membership fees periodically. Upon default in payment membership might be suspended or terminated or liability to the organization having been paid according to the terms of the membership contract, the association became liable for payment of benefits, to a nominee of the deceased member, or a specific purpose under the contract, or to the estate of the deceased member. The objection to the claim of the Commonwealth was raised under provisions of the Act of June 24, 1937, P. L. 2045, sec. 4, as amended by the Act of June 9, 1939, P. L. 310, which reads:

"The real and personal property of any indigent

person shall be liable for the expenses of his support, maintenance, assistance and burial, incurred by any public body or public agency, if such property was owned during the time such expenses were incurred, or if the right to ownership of such property existed or was acquired during the time such expenses were incurred . . .".

Blackstone, in his Commentaries, Book II, p. 396, having classified property as that in possession, "which subsists there only where a man hath both the right and also the occupation of the thing" and "property in *action*, or such where a man hath not the occupation, but merely a bare right to occupy the thing in question; the possession whereof may, however, be recovered by a suit or action at law; from whence the thing so recoverable is called a thing, or *chose in action*", further observes that the property or right of action may depend upon an express contract to pay a stated sum, or an implied contract, "that if the covenantor does not perform the act he engaged to do, he shall pay . . ." the damages sustained by the breach. He adds:

"All property in action depends entirely upon contracts, either express or implied; which are the only regular means of acquiring a *chose* in action, . . .".

A familiar modern example of a chose in action would appear to be the contract of a life insurance company with a policyholder, calling for payment of periodic premiums throughout the life of the policyholder, with a payment in settlement of the policy right by the company at the time of the death of the insured. The contract is a continuing contract, valid and binding between the company and the insured, so long as the insured maintains what may be termed his membership in the company, by payment of premiums, dues or other stipulated sums, as required by the bylaws or rules of the organization. The mere

fact that the written contract, the policy, does not provide a cash surrender value does not operate against the validity and binding character of the contract. The insured has a property right under the contract. The right of possession may be enforced at the termination of the contract, by suit. The right of property continues, throughout the life of the contract, in the insured. Payment or enforcement of the right of possession is deferred until the death of the insured, or such other time as may be fixed by the contract.

The payments made to the accountant were in discharge of the contract. The contract did not provide for a specific beneficiary and, consequently, the right of property was and remained in the estate of this decedent. *We accordingly find in favor of claimant and award the balance of $506.35 in part settlement of the liability.* Reference may be had to our decision in the matter of the estate of Elmer Ziegenfuss, deceased, and our adjudication thereon confirmed July 8, 1950.

Balance due estate, as appears by account filed......$ 993.75
Additional credit ...............................  6.00

$ 987.75

*Distribution*
To Clerk of the Orphans' Court, adjudication costs......  4.00

$ 983.75

To Leibensperger Funeral Home, funeral expenses.$477.40
To Commonwealth of Pennsylvania, Department of
    Public Assistance, a/c claim for $513.70...... 506.35
————$ 983.75

It is ordered and decreed that Leafie M. Smith, Executrix, as aforesaid, do pay the distributions to the persons respectively entitled thereto.

And now, April 12, 1952, this adjudication is confirmed nisi; and in the absence of exceptions, filed within 10 days herefrom, such confirmation shall become absolute, as of course.